**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **VERATHON, INC.** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:13-CV-205** |
| **v.** | : | |
| | : | |
| **DEX ONE SERVICE, INC., et al.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **Defendants.** | : | **Magistrate Judge Terence P. Kemp** |
| | : | |

**OPINION & ORDER OF POSSESSION**

This matter is before the Court on Plaintiff Verathon, Inc.'s ("Plaintiff" or "Verathon") Motion for Replevin, (Doc. 2), and Defendant DEX Corporation Northeast's ("Defendant" or "DEX")[1] Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), (Doc. 8).  For the reasons set forth below, Defendant's Motion to Dismiss is **DENIED** and Plaintiff's Motion is **GRANTED**.

**I. BACKGROUND**

Plaintiff, a Washington corporation, is a manufacturer of medical products including the BVI 3000 Bladder Scan (the "Bladder Scanners"). Bladder Scanners are instruments sold to hospitals and physician practices and used to measure liquid in a patient's bladder. *Grieco Test.*[2] Purchased Bladder Scanners are subject to limited warranties, which entitle buyers to certain warranty repair services at no charge to the buyer.  (*See Terms & Conditions for Sale*, Doc. 16,

---

[1] Defendant's motion to dismiss indicates that Plaintiff mistakenly sued the incorrect parties in this case.  Defendant avers that Plaintiff's various contracts were made with Data Exchange Corporation, a California corporation doing business as DEX.  (*Bakhru Dec*., Doc. 8, Ex. A, ¶¶ 2-4.)  The remaining Defendant, DEX Corporation Northeast, is an affiliate of DEX, but is not the party that contracted with Plaintiff. (*Id*.)
[2] This refers to the testimony of Verathon Chief Financial Officer Susan Grieco at the replevin hearing held before this Court on March 18, 2013.

Ex. E at 1; *Terms of Extended Warranties*, Doc. 16, Ex. F.) The Food and Drug Administration

regulates these devices, and requires both manufactures and purchasers to track and maintain

device serial numbers and service histories. *Grieco Test*.

Data Exchange Corporation is a California corporation doing business as "DEX". (*Bakhru Dec*.,

Doc. 8, Ex. A, ¶¶ 2-4.)

### A. The Warehousing Agreement

On January 27, 2011, Plaintiff entered into contract with DEX to warehouse and

distribute certain Verathon medical disposable products (the "Warehousing Agreement"). P. Ex.

C.[3] The contract did not provide for the storage and/or distribution of Bladder Scanners.

Section IV.16 of the Warehousing Agreement addresses "Lien/Security Interests" and

provides that

> DEX shall and does have an enforceable warehousemen's and or repairmen's lien
> and a security interest against any and all Product and equipment at any time
> found in DEX's facility to secure payment of any and all outstanding obligations
> of [Verathon] to DEX for storage and all other services provided by DEX at any
> time with respect to such Product, as well as for any other sum due from
> [Verathon] to DEX under this agreement or otherwise, including for storage and
> other services relating to Product previously delivered by DEX to [Verathon].

*Id*. at § IV.16.

The Warehousing Agreement also contains the following forum selection provision:

> [T]he State of California has personal jurisdiction over each of the parties and
> any disputes or litigation in any way pertaining to this Agreement, and … the sole
> proper and exclusive venue for any litigation or disputes in any way pertaining to
> this Agreement shall be within the State of California.

*Id*. at § IV.17.

---

[3] This refers to Plaintiff's Exhibit C, as entered into evidence at the at the replevin hearing held before this Court on
March 18, 2013.

*B. The Repair Agreement*

On October 21, 2011, Plaintiff entered into a second contract with DEX to provide repair and certification services for its Bladder Scanners (the "Repair Agreement"). P. Ex. A.[4] Verathon Chief Financial Officer Susan Grieco ("Grieco") testified that Verathon entered into this contract in order to fulfill its warranty and service agreement obligations to customers who had purchased Verathon Bladder Scanners. *Grieco Test.* (*See also Terms & Conditions for Sale*, Doc. 16, Ex. E at 1; *Terms of Extended Warranties*, Doc. 16, Ex. F.)

The Repair Agreement sets forth per unit pricing terms for DEX's handling and repairs of Bladder Scanners. P. Ex. A at 1.  In addition, the contract contains a chart depicting the required flow for DEX processing of Bladder Scanner certifications based on customer requests. *Id.* at 3. Under the Repair Agreement, Verathon would receive repair and certification requests from its customers, prepare return authorizations ("RAs"), and instruct customers to ship their Bladder Scanners to DEX.  *Grieco Test.*; *see also Terms & Conditions for Sale*, Doc. 16, Ex. E at 1 ("To obtain warranty service, Buyer must obtain from Verathon a return authorization number and send the Product with a description of the issue to Verathon…").  DEX would then perform its contractual services with respect to the Verathon RAs, invoice Verathon for the associated charges, and ship the serviced devices directly back to their owners. *Grieco Test.* The parties agree that title for all Bladder Scanners serviced pursuant to the Repair Agreement rested with the customers, not with Verathon.

The language of the Repair Agreement provides that its terms "act as an amendment to the [preexisting Warehousing] Agreement for Services between DEX and Verathon." P. Ex. A at

---

[4] This refers to Plaintiff's Exhibit A, as entered into evidence at the at the replevin hearing held before this Court on March 18, 2013.

2.  The Repair Agreement contained no provisions related to forum selection or lien rights in the Bladder Scanners.  *See generally id*.

### C. The Quality Agreement

On August 30, 2012, Verathon and DEX entered into a third contract addressing matters of product service and calibration (the "Quality Agreement"). P. Ex. B.[5] The Quality Agreement sets forth certain requirements related to the servicing, repair and calibration of Verathon Bladder Scanners, including applicable service and repair levels, certification standards, part replacement standards, and standards for the certification and training of repair and certification personnel. The Bladder Scanners are the only Verathon product referenced in the agreement.  *Id*. at 2.  The Quality Agreement does not address the pricing or flow of repairs and certifications for the Bladder Scanners, nor any provisions relating to product liens.  *See generally id*.

Section 11.2 of the Quality Agreement, entitled "Governing Law; Dispute Resolution," provides that the contract is "governed and interpreted in accordance with the laws of the State of Washington." *Id*., § 11.2 at 7. Furthermore, it provides that "all disputes arising under this Agreement will be settled by binding arbitration in accordance with the commercial arbitration rules of the United Nations Commission on International Trade Law ("UNCITRAL")" in the venue of Seattle, Washington if initiated by DEX, or at or near DEX's Service Center in Groveport, OH if initiated at the request of Verathon. This clause further specifies that "each party retains the right to seek temporary injunctive relief in court pending the completion of the arbitration process." *Id*.

Finally, Section 11.6 of the Quality Agreement, provides that

---

[5] This refers to Plaintiff's Exhibit B, as entered into evidence at the at the replevin hearing held before this Court on March 18, 2013.

> [t]his agreement, together with all exhibits hereto, constitutes the entire agreement and understanding between the parties regarding the subject matter addressed herein and supersedes and replaces all prior negotiations, understandings and agreements, proposed or otherwise, whether written or oral, concerning the subject matter hereof.

*Id.*, § 11.6 at 7.  The Quality Agreement does not address the pricing or flow of repairs and certifications, and Plaintiff agrees that the terms of the Repair Agreement survived the subsequent signing of the Quality Agreement.

### D. Current Dispute

In November 2012, Verathon advised DEX that it was terminating the Warehousing, Repair and Quality Agreements.  D. Ex. 6.[6]  DEX alleges that, in terminating the Warehousing Agreement, Verathon breached its contract DEX and owes DEX compensatory damages.  D. Ex. 7.[7] Defendant has therefore asserted a lien on 23 Bladder Scanners in its possession for repair and/or certification.  *See* P. Ex. D[8] (schedule of 23 Bladder Scanners in DEXs possession as of January 25, 2013, identified by serial number).   Despite demands from the Bladder Scanner customers to have their devices returned to them, DEX retains possession of the disputed properties.  The withheld Bladder Scanners are currently being housed at DEX's Service Center in Groveport, Ohio.  *Greico Test.*

Plaintiff argues that Defendant's lien on the withheld Scanners is not valid because the devices are owned by Verathon's customers, not Verathon itself, and were in DEX's possession pursuant to the Repair and Quality Agreements, not the Warehousing Agreement.  Moreover,

---

[6] This refers to Defendant's Exhibit 6, as entered into evidence at the at the replevin hearing held before this Court on March 18, 2013.

[7] This refers to Defendant's Exhibit 7, as entered into evidence at the at the replevin hearing held before this Court on March 18, 2013.

[8] This refers to Plaintiff's Exhibit D, as entered into evidence at the at the replevin hearing held before this Court on March 18, 2013.

Plaintiff avers that DEX has been paid all of the actual costs of repair for all of the withheld devices. *Grieco Test*.; *Grieco Aff*., Doc. 4, ¶ 6.

Plaintiff asserts that its relationship and credibility with its customers have been damaged by its inability to fulfill its obligations to return the withheld Bladder Scanners to their proper owners. *Grieco Test*.  Plaintiff has provided loaner second-hand Bladder Scanners to all 23 owners of withheld Bladder Scanners. *Id*.; *Service Equipment Agreements*, Doc. 16, Exs. G-CC (servicing agreements for replacement devices for all withheld Bladder Scanners).

The list price of a new Bladder Scanner is $11,500.  P. Ex. D.  Verathon sells second-hand Bladder Scanners for between $6,000 and $8,000 per device.  *Grieco Test*.  Despite Plaintiff's provision of such replacements, Plaintiff's customers have requested the return of their original devices. Plaintiff testifies that new devices do not constitute a perfect substitute for customers' original Bladder Scanners because each device has its own serial number and device history for which federal regulation makes purchasers responsible. *Id*.

On March 4, 2013, Plaintiff filed an action asserting claims against DEX for replevin, conversion, and tortious interference with a business relationship. (Doc. 1.) Simultaneously, Plaintiff moved for an order requiring Defendants to return the withheld Bladder Scanners to Verathon, pursuant to Fed. R. Civ. P. 64 and Ohio's replevin statute, O.R.C. § 2737, or, in the alterative, for a Temporary Restraining Order and/or Preliminary Injunction pursuant to Fed. R. Civ. P. 65. (Doc. 2.)

On March 5, 2013, this Court held a conference pursuant to Local Rule 65.1. This Court found Plaintiff's motion for temporary restraining order moot because the parties agreed on the record that DEX would not dispose of, damage, destroy, sell or transfer title or interest in the Bladder Scanners until the resolution of Plaintiff's replevin action. (Doc. 7 at 1.)  Instead,

6

pursuant to O.R.C. § 2737.07, the Court scheduled a hearing on Plaintiff's motion in replevin, and the parties agreed to waive the statutory requirements for a formal hearing request and notice of proceeding set forth in O.R.C. § 2737. A replevin hearing was held before this Court on March 18, 2013. Prior to the hearing, Defendant moved to dismiss Plaintiff's action for lack of personal jurisdiction. (Doc. 8.) The personal jurisdiction and replevin matters have been fully briefed. (*See* Docs. 8, 9, 11, 12, 13, 15, 16.) These issues are, therefore, ripe for review.

## II. MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Because "personal jurisdiction is a threshold determination linked to any subsequent order issued by the court," *The Kroger Co. v. Malease Foods Corp*., 437 F.3d 506, 510 (6th Cir. 2006), the Court addresses Defendant's jurisdictional arguments first.

As a general matter, "[p]ersonal jurisdiction over an out-of-state defendant arises from certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir. 2007)) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)) (internal quotations omitted). Here, DEX does not argue that it lacks sufficient contacts with the Southern District of Ohio to justify this Court's exercise of jurisdiction; indeed, the 23 Bladder Scanners at issue in this case are being held by DEX at its Service Center in Groveport, Ohio. Rather, DEX contends that dismissal is warranted in light of the Warehousing Agreement's forum selection clause. Defendant also argues that jurisdiction in this Court remains improper even if the Quality Agreement's dispute resolution applies in this case.

7

*A. Governing Jurisdictional Provision*

Defendant first argues that this Court lacks jurisdiction to decide Plaintiff's replevin action because the governing jurisdictional provision in this case is the Warehousing Agreement's forum selection clause.  That clause grants the State of California "personal jurisdiction over each of the parties and any disputes or litigation in any way pertaining to this Agreement," and makes California "the sole proper and exclusive venue for any litigation or disputes in any way pertaining to this Agreement." P. Ex. C at § IV.17.

The Sixth Circuit has stated unequivocally that "[a] forum selection clause should be upheld absent a strong showing that it should be set aside." *Wong v. PartyGaming Ltd.,* 589 F.3d 821, 828 (6th Cir. 2009) (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595 (1991)). Thus, "[w]hen evaluating the enforceability of a forum selection clause, this court looks to the following factors: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* (quoting *Sec. Watch, Inc. v. Sentinel Sys., Inc.,* 176 F.3d 369, 375 (6th Cir. 1999)). Moreover, "[t]he party opposing the forum selection clause bears the burden of showing that the clause should not be enforced."  *Id.* (citing *Shell v. R.W. Sturge, Ltd.,* 55 F.3d 1227, 1229 (6th Cir. 1995)).

Plaintiff, however, does not suggest that the Warehousing Agreement's forum selection clause should be set aside as unenforceable.  Verathon instead argues that a different jurisdictional provision governs in this case: the Quality Agreement's "Governing Law; Dispute Resolution" clause. P. Ex. B, § 11.2 at 7.  That term provides that "all disputes arising under this Agreement will be settled by binding arbitration," but gives the contracting parties the right to

"seek temporary injunctive relief in court pending the completion of the arbitration process." *Id.*
In Plaintiff's view, the Southern District of Ohio is the proper forum in which to seek injunctive relief under that clause.

The Court finds that the Bladder Scanners at issue in this case came into DEX's possession pursuant to the Repair and Quality Agreements. Thus, the parties' current replevin dispute can be said to have arisen, at least in part, under those contracts. The Quality Agreement's "Governing Law; Dispute Resolution" clause applies to "[a]ll disputes arising under this Agreement." P. Ex. B, § 11.2 at 7. Moreover, the Quality Agreement specifies that it "supersedes and replaces all prior negotiations, understandings and agreements … whether written or oral concerning the subject matter hereof." *Id.*, § 11.6 at 7. Thus, for the purposes of interpreting the Quality Agreement, the dispute resolution clause it contains supplants any earlier such agreement between the parties, including the forum selection clause memorialized in the Warehousing Agreement.

Defendant counters that the current dispute arises not out of DEX's initial possession of the Bladder Scanners, but pursuant to the Warehousing Agreement's lien clause. That characterization of the controversy, however, does not change the outcome of the jurisdictional inquiry. Certainly, Defendant is correct that the success of Plaintiff's replevin action turns on whether DEX's detention of the disputed property is "wrongful." *See* O.R.C. 2737.03(C). Such a determination does indeed depend in part on whether, as a matter of contract interpretation, the Warehousing Agreement's lien provision extends to the Bladder Scanners. This determination, however, also requires a fact-finder to interpret the subsequent Quality Agreement: the Court must consider whether the Quality Agreement supersedes the lien provision in the earlier Warehouseing Agreement. Again, because disputes implicating the proper construction of the

9

Quality Agreement are governed by that contract's "Governing Law; Dispute Resolution" clause, the Quality Agreement's jurisdictional provisions govern the current replevin action.

### B. Whether Jurisdiction is Proper Under the Quality Agreement

Defendant also argues that, even if the Quality Agreement's dispute resolution clause applies, jurisdiction before this Court remains improper.  First, Defendant cites Washington state and federal law for the proposition that any action for injunctive relief pending arbitration must be filed in the same forum as the arbitration proceeding.  DEX interprets the Quality Agreement to establish Seattle, Washington as the exclusive arbitration venue, and concludes that Plaintiff's action may only be filed in a court of competent jurisdiction in that state.  Defendant misreads the Quality Agreement.  In fact, the "Governing Law; Dispute Resolution" clause makes clear that Seattle is the appropriate venue for arbitration only "if the arbitration is initiated at the request of [DEX's] Service Center."  P. Ex. B, § 11.2 at 7.  Where arbitration is initiated at the request of Verathon, the venue for arbitration is "in or near the city in which Service Center's principal offices are located."  *Id*. The DEX Service Center referenced in the Quality Agreement is located in Groveport, Ohio. P. Ex. B. at 1. Thus, by filing an action for injunctive relief in this Court, Verathon did in fact file in the same forum as that in which it would be required to arbitrate under the Quality Agreement.

Although Defendant notably makes no arbitration demand, DEX further argues that Verathon waived its rights under the Quality Agreement's arbitration clause by bringing DEX before this Court.  (Doc. 8 at 9.)  As a preliminary matter, the question of whether a particular claim must be committed to arbitration is distinct from the question of whether a court has *personal jurisdiction* over a defendant.  *See Turi v. Main Street Adoption Services*, *LLP*, 633 F.3d 496, 503 (6th Cir. 2011) (where interlocutory appellate jurisdiction arose from arbitration

claim, finding no pendant appellate jurisdiction over personal jurisdiction claim because "the resolution of whether the plaintiffs' claims must be arbitrated … does not 'necessarily and unavoidably' resolve whether personal jurisdiction and venue are proper").  As described above, an action in the Southern District of Ohio is consistent both with DEX's minimum contacts with the forum, and with the Quality Agreement's jurisdictional restrictions.

While the Quality Agreement's arbitration language does not to strip the Court of personal jurisdiction over the Defendant generally, it may stay the Court's hand in resolving particular disputes.   That language does not, however, prevent the Court from deciding Plaintiff's current motion.  In mandating arbitration for "[a]ll disputes arising under [the Quality] Agreement," the "Governing Law; Dispute Resolution" provision explicitly preserves the rights of the parties to "seek temporary injunctive relief in court." P. Ex. B, § 11.2 at 7. In filing its motion, (Doc. 2), Plaintiff was exercising that right.

Plaintiff moved for preliminary relief pursuant to Fed. R. Civ. P. 64, which authorizes parties to utilize available state law remedies that "provide[] for seizing a person or property *to secure satisfaction of [a] potential judgment*." Fed. R. Civ. P. 64(a) (emphasis added).  In Ohio, the preliminary remedy in replevin is an "order of possession," which is an "order issued by the court … for delivery to the movant of possession of specific personal property *pending final judgment in the [replevin] action*." O.R.C. § 2737.01(D) (emphasis added).  The specific requirements for a motion for an order of possession are set forth under O.R.C. § 2737.03.[9] Here, although Plaintiff describes its motion as one for an "Order of Replevin," Plaintiff's

_____

[9] "Final Judgment" in a replevin action is covered by a separate statutory provision, O.R.C. § 2737.14, which awards to the movant *permanent* possession of the property and certain associated damages.

briefings cite to and apply the standards of O.R.C. § 2737.03. (*See* Doc. 2 at 4-6; Doc. 11 at 5-6.) Moreover, the March 18, 2013 hearing was an O.R.C. § 2737.07 proceeding, which statute dictates "shall be limited to a consideration of whether there is probable cause to support [a] motion [for an order of possession]." O.R.C. § 2737.07(B).   Accordingly, the matter sub judice is properly construed as a motion for an order of possession – a preliminary equitable remedy that falls within the stated exception to the Quality Agreement's mandatory arbitration provision.

In light of the foregoing, DEX's Motion to Dismiss for lack of personal jurisdiction is **DENIED**.

### III. MOTION IN REPLEVIN

Plaintiff now moves pursuant to Fed. R. Civ. P. 64 and Ohio Revised Code § 2737 for and order requiring DEX to return the 23 withheld Bladder Scanners cited by Verathon. Rule 64(a) provides that "at the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Rule 64(b) specifically lists replevin as one such remedy available under this rule.

As described above, the preliminary remedy in replevin in Ohio is called an "order of possession," which is "the order issued by a court under [O.R.C. § 2737] for delivery to the movant of possession of specific personal property pending final judgment in the action." O.R.C. § 2737.01(D). Ohio Revised Code § 2737.03 sets forth the following requirements to initiate a motion for an order of possession:

> Any party to an action involving a claim for the recovery of specific personal property, upon or at any time after commencement of the action, may apply to the court by written motion for an order of possession of the property. The motion shall have attached to it the affidavit of the movant, his agent, or his attorney containing all of the following:

12

(A) A description of the specific personal property claimed and the approximate value of each item or category of property claimed;

(B) The specific interest of the movant in the property and, if the interest is based upon a written instrument, a copy of that instrument;

(C) The manner in which the respondent came into possession of the property, the reason that the detention is wrongful and, to the best of the knowledge of the movant, the reason, if any, that the respondent may claim the detention is not wrongful;

(D) The use to which the respondent has put the property, as determined by the movant after such investigation as is reasonable in the circumstances;

(E) The extent, if any, to which the movant is or will be damaged by the respondent's detention of the property;

(F) To the best of the movant's knowledge, the location of the property;

(G) That the property was not taken for a tax, assessment, or fine pursuant to statute, or seized under execution of judgment against the property of the movant or, if so seized, that it is statutorily exempt from seizure.

O.R.C. 2737.03.

The replevin statute further directs that "[t]he court shall issue an order of possession if it finds, on the basis of the affidavit and, if applicable the evidence presented at the [order of possession] hearing, that there is probable cause to support the motion." O.R.C. § 2737.07(B). In this context, "probable cause to support the motion" means that "it is likely that the movant will obtain judgment against the respondent that entitles the movant to permanent possession of the specific personal property that is the subject of a motion [for an order of possession]." O.R.C. § 2737.01(C). Here, as explained below, Plaintiff has made the requisite evidentiary showing to warrant this Court's issuance of an order of possession.

13

### A. Plaintiff's Interest in the Property

O.R.C. 2737.03(B) requires a showing of "[t]he specific interest of the movant in the property and, if the interest is based upon a written instrument, a copy of that instrument."  Because "[a] Replevin action is a possessory action by which the owner or one who has a general or special interest in the personal property and the right to immediate possession seeks to recover the possession of the property … [t]he right of possession of the property because of title or interest in it is an essential element in a Replevin action."  *J & J Truck and Trailer Repair, Inc. v. Cyphers*, Case No. 6625, 1980 WL 352585, at *1 (Ohio App. 2d Dist. Dec. 12, 1980).

Defendant, for the first time in these proceedings, argued to the Court at the March 18, 2013 hearing that Plaintiff was not the proper party to sue for an order of possession because it does not own the property at issue.  Plaintiff admits that title for the 23 Bladder Scanners lies exclusively with Verathon's customers, not with Verathon itself.  The Court notes the contradiction inherent in Defendant's position: Defendant has asserted a lien interest in these devices based on Verathon's alleged debt to DEX, but is now arguing that Verathon lacks any interest in those properties that would permit it to bring a possessory action. Nevertheless, the replevin statute imposes no requirement that a movant demonstrate formal title to the disputed property.  Rather, O.R.C. 2737.03(B) simply mandates a showing of a "specific interest" in that property.  Thus, the plain language makes clear that something less than simple title will suffice.  *See J & J Truck and Trailer Repair, Inc. v. Cyphers*, 1980 WL 352585, at *1 (noting that a possessory action may be brought by "the owner *or one who has a general or special interest in the personal property*" and holding that, where an ownership interest is alleged, failure to

14

demonstrate such interest is fatal to the action).  The question here, then, is whether Verathon's particular interest in the Bladder Scanners can satisfy the statue.

Plaintiff characterizes its interest in the Bladder Scanners as a bailment interest. Under Ohio law, "a bailment is the delivery of goods or personal property by one person to another in trust for a particular purpose."  *Welch v. Smith*, 717 N.E.2d 741, 744 (Ohio App. 1998).  A contract of bailment "is formed like any other contract" and "may be express or implied." *George v. Whitmer*, No. 05-CA-70, 2006 WL 242563, at *2 (Ohio App. Jan 20, 2006) (citing *Bess v. Trader's World, Inc.*, No. CA2001-06-063, 2001 WL 1652810 (Ohio App. Dec. 24, 2001); *Agricultural Ins. Co. v. Constantine* (1944), 58 N.E.2d 658, 663 (Ohio 1944); and *Giles v. Meyers*, 107 N.E.2d 777, 779 (Ohio 1952)). Defendant argues that the Bladder Scanners are owned and were delivered to DEX by Verthon's customers – making the customers, not Verathon itself, the bailors in the relevant relationship.

Certainly, Defendant is right that Verathon's role here does not map easily onto the typical bailment relationship. Plaintiff's customers contracted with Verathon to provide the certain servicing and repairs for their Bladder Scanners. (*See Warranty and Service Agreements*, Doc. 16, Exs. E-CC.)  Verathon in turn outsourced its contractual responsibilities to DEX.  *Repair Agreement*, P. Ex. A. Verathon dictated the standards under which DEX was required to perform those services. *Quality Agreement*, P. Ex. A. The customers then delivered their Bladder Scanners to DEX at Verathon's direction, and Verathon paid DEX for the services performed.  Accordingly, Verathon has some characteristics of a bailor, in that services were initiated pursuant to Verathon authorization requests and Verathon is contractually obligated to pay DEX for the costs

15

of services performed.  Verathon also has some characteristics of a bailee, in that it is

contractually obligated to ensure that the required repair services are performed and the

Bladder Scanners are returned to their owners.  In fact, Verathon has already incurred the

costs of providing loaner Bladder Scanners to all 23 affected customers, and may be

forced to replace the devices permanently if the original Bladder Scanners are not

returned.  In any case, to determine whether Verathon meets the requirements of O.R.C.

2737.03(B), the Court need not reach the question of whether Verathon's interest in the

Bladder Scanners is properly considered a bailment interest. On the unique facts of this

case, the Court finds that Verathon's contractual interest in the Bladder Scanners,

however characterized, is sufficient to constitute a "specific interest" under the meaning

of the replevin statute.

### D. Nature of Detention

Pursuant to O.R.C. 2737.03(C), a movant must present "manner in which the

respondent came into possession of the property, the reason that the detention is wrongful

and, to the best of the knowledge of the movant, the reason, if any, that the respondent

may claim the detention is not wrongful."  Here, Plaintiff has explained the matter in

which the Bladder Scanners came into DEX's possession, explained its positions as to the

wrongful nature of their detention and given this Court notice of DEX's likely defenses.

The outstanding question, then, is whether Plaintiff has met its burden to show that

DEX's detention of the Bladder Scanners was wrongful.

A detention is not wrongful if the detaining party has a valid lien in the disputed

property.  Lien rights can arise under a contract, a statute, or both.  Here, Plaintiff has

made a showing that DEX has no lien rights to the property through any of these

16

mechanisms.  There is therefore probable cause to find wrongful Defendant's detention of the Bladder Scanners.

1. Contractual Lien

Defendant argues that the lien clause in the Warehousing Agreement applies to the withheld Bladder Scanners.  The Court first considers which contract governs the question of whether a contractual lien has arisen in those devices.

As explained above, the Quality Agreement "supersedes and replaces all prior negotiations, understandings and agreements … concerning the subject matter [t]hereof." P. Ex. B, § 11.6 at 7. That provision cannot be interpreted to mean that the Quality Agreement governs all contract terms related to the Bladder Scanners; Plaintiff admits that the pricing and flow terms for Bladder Scanners in the Repair Agreements survived the signing of the Quality Agreement. Rather, the Quality Agreement only supersedes prior agreements on the express subject matter of the contract.  Because there is no clause in the Quality Agreement relating to liens or security interest, any prior agreement as to such matters was not altered by its execution.  Thus, the lien provisions in the Warehousing Agreement govern the question of whether Defendant has a valid lien in the Bladder Scanners.

The language of the Warehousing Agreement gives DEX the right to a lien on "any and all Product and equipment at any time found in DEX's facility to secure payment of any and all outstanding obligations of [Verathon] to DEX for storage and all other services provided by DEX at any time with respect to such Product, as well as for any other sum due from [Verathon] to DEX under this agreement or otherwise." P. Ex. C at § IV.16. Section 1.1 of the Warehousing Agreement defines the term "Product" as that

"product described in any attached proposal, statement of work, order or invoice," which does not include Bladder Scanners in DEX's possession pursuant to the Repair Agreement.  Notably,  however, the Warehousing Agreement's clause governing DEX lien rights also specifies a right to lien or security interest in any Verathon "equipment" that might be "at any time found in DEX's facility."  Thus, the fact that the Bladder Scanners are in DEX's possession pursuant to a different agreement does not obviate potential lien rights.

Nevertheless, by the terms of the contract, DEX only has potential lien rights in equipment in a DEX facility if such equipment *belongs to Verathon*.  Indeed, Verathon lacks the authority to grant a security interest in property it does not own.  Here, as Defendant admits, the Bladder Scanners belong to the Verathon's customers, and were in Defendant's possession only because Plaintiff had contracted with DEX to fulfill Verathon's obligations to its customers under the Bladder Scanner warranties and service agreements.  Accordingly, DEX cannot assert a valid contractual lien against the Bladder Scanners pursuant to the Warehousing Agreement.

## 2. Warehouseman's Lien

Nor does DEX have a valid statutory warehouseman's lien in the property.  Ohio Revised Code § 1307.209(A) provides that a warehouseman has a lien in certain goods "for charges for storage or transportation, including demurrage or terminal charges, insurance labor, or other charges, present or future, in relation to goods, and for expenses necessary for the preservation of the goods or reasonably occurred in the sale pursuant to law."   As a preliminary matter, with respect to the Bladder Scanners, DEX was not acting as a warehouse entitled to utilize a warehousing lien. S*ee* O.R.C. § 1307.102(13) (defining warehouse as an entity "engaged in the business of storing goods for hire").  Rather, DEX was contracted to provide only repair and certification services as to those products.

Moreover, although O.R.C. §1307.209(B) permits a warehouseman to extend a lien beyond what is strictly due relating to the warehouseman's functions, such liens only extend to properties in which there is a valid security interest created pursuant to Ohio Revised Code Chapter 1309. Ohio Revised Code §1309.203(B), requires that, in order to have an enforceable security interest, there must exist a valid security agreement. In this case, as discussed above, there is no security agreement as to the Bladder Scanners. The Warehousing Agreement does not satisfy this requirement because Plaintiff's customers – the owners of the Bladder Scanners – are not a party to it.  No security agreement exists between Plaintiff's customers and DEX.  Accordingly, DEX can have no valid statutory warehouseman's lien against the property.

<u>3. Repairman's Lien</u>

Repairman's liens are governed by Ohio Revised Code §1333.41.  Specifically, O.R.C. § 1333.41(A) provides:

> (A)…a bailee for hire to perform services or provides materials with respect to any personal property, has a lien on the personal property *to secure the reasonable value of the services he performs and the materials he provides*….

(Emphasis added). Hence, by the terms of the statute, a repairman's lien is limited to the reasonable value of the services and materials provided. Here, Defendant admits to having been fully compensated for the specific services and materials related to the Bladder Scanners.  Rather, Defendant has asserted a lien against the Bladder Scanners to secure amounts it claims it is owed by Plaintiff for breach of the Warehousing Agreement.  The statute, however, does not permit a lien for other monies allegedly owed due to an unrelated breach of contract claim.  Accordingly, Defendant does not have a valid statutory repairman's lien interest in the Bladder Scanners.

Because there is probable cause to conclude that Defendant neither has a vaild contractual nor statutory lien interest in the Bladder Scanners, Plaintiff has met its burden of showing that DEX's detention of that property is wrongful.

### C. Uncontested Requriements for Order of Possession

Defendant does not contest that Plaintiff meets the other requirements for an order of possession. O.R.C. 2737.03(A) mandates that a movant for an order of possession provide "[a] description of the specific personal property claimed and the approximate value of each item or category of property claimed." Plaintiff is seeking return of 23 Bladder Scanners in DEX's possession, and has identified each by Verathon Return Authorization Number, Serial Number, and approximate value ($11,500 per device).  P. Ex. D.  Defendant does not contest its possession of these particular devices.  Plaintiff has therefore met its burden with respect to O.R.C. 2737.03(A).

Defendants do not contest Plaintiff's assertion that DEX has not put the Bladder Scanners to any use. *See* O.R.C. §2737.03(D).

Plaintiff has also made a showing that it will be damaged "by the respondent's detention of the property."  O.R.C. §2737.03(E).  Specifically, Plaintiff's representative testified at the March 18, 2013 hearing that its relationship with its customers is being damaged as a result of being unable to return their Bladder Scanners to them. Furthermore, Plaintiff has loaned replacement devices to all of the owners of the withheld Bladder Scanners.  *Grieco Test.*

20

Plaintiff satisfies O.R.C. § 2737.03(F), because it has stated that the Bladder Scanners are currently being held in Defendants' facility at 5945 Opus Drive, Groveport, Ohio 43125.

Finally, the requirements of Ohio Revised Code §2737.03(G) are met because the Bladder Scanners were not taken for a tax assessment, fine pursuant to statute, or seized under execution of judgment.

Plaintiff has made the requisite probable cause showing as to all the elements of O.R.C. § 2737.03, and is therefore entitled to an order of possession with respect to the Bladder Scanners.  O.R.C. § 2737.07(B).

### *D. Bond*

Pursuant to O.R.C. § 2737.10, an order of possession issued shall not be effective until the movant files with the Court a bond "in an amount twice the approximate value of the property described in the order."  According to Plaintiff's description of the property, the Bladder Scanners at issue here are valued at approximately $276,000.00. Therefore, this Court's Order of Possession is not effective until Verathon files with the Court a bond in the amount of **$552,000.00**.

### **IV. CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED**. Plaintiff's Motion for an Order of Possession is **GRANTED**.  This Order of Possession shall not be effective until Verathon files with the Court a bond in the amount of **$552,000.00**.

Consistent with the requirements 2737.08(A) and (B), dictating the contents of an order of possession, the Court hereby **ORDERS** as follows:

(1)  Movant is Verathon, Inc.  Respondent is Data Exchange Corporation.  This action was brought in the U.S. District Court of the Southern District of Ohio.

(2) The property to be seized consists of the 23 Bladder Scanners identified in Attachment 1 to this Order.

(3) The Bladder Scanners are currently being held in Defendants' facility at 5945 Opus Drive, Groveport, Ohio 43125.

(4) DEX shall deliver possession of the property to Verathon within 14 days of the date of this Order, or file a bond pursuant to O.R.C. § 2737.11 within that time.  The parties shall confer as to the place at which DEX is to deliver possession and, within 3 days of this Order, notify the Court of such agreement, so that it may designate that place for delivery.

(5) Pursuant to O.R.C. § 2737.11, DEX may recover the property by filing with the Court, a bond with the Court in the amount of **$552,000.00.**

**IT IS SO ORDERED.**

**s/ Algenon L. Marbley**
**Algenon L. Marbley**
**United States District Judge**

**Dated: April 16, 2013**